**FILED**

DEC 05 2017

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                    DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTON EWING,<br><br>Plaintiff,<br><br>v.<br><br>CHARTER COMMUNICATIONS HOLDING COMPANY, LLC, et al.,<br><br>Defendants. | Case No.: 3:17-cv-00222-BEN-WVG<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION TO COMPEL ARBITRATION AND STAYING ACTION; and**<br><br>**(2) DENYING REQUEST FOR MONETARY SANCTIONS** |

Pending before the Court is the motion to compel arbitration and stay action, and for monetary sanctions filed by Defendant Charter Communications Holding Company, LLC ("Charter"). (Docket No. 5.) The motion is fully briefed. The Court finds the motion suitable for determination on the papers without oral argument pursuant to Civil Local Rule 7.1.d.1. For the reasons that follow, Charter's motion to compel arbitration and stay is **GRANTED**, and for monetary sanctions is **DENIED**.

///

///

///

1

# FACTUAL BACKGROUND[1]

This case arises out of alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, et seq. Plaintiff Anton Ewing alleges, *inter alia*, Defendant Charter violated the TCPA by negligently or intentionally contacting him using an automatic telephone dialing system multiple times on his cellular and home telephones, and recording said calls without warning, disclosure, or his consent. Ewing alleges he is "neither a subscriber nor client of Defendants services [sic], never contacted Defendants, nor provided Defendants with his personal information, home phone or cellular telephone number." (Docket No. 1, Compl. ¶ 37.) He further alleges that he never gave Charter or its agents "prior express consent to receive unsolicited telephone calls." (*Id.*)

Defendant Charter alleges Ewing "subscribes to Charter's residential cable services, which it provides to Ewing under the brand name 'Spectrum.'" (Mot. at 1.) It further alleges Ewing's claims are subject to a mandatory arbitration provision in the Residential Services Subscriber Agreement ("Subscriber Agreement"), which governs their relationship.[2] (*Id.*) The arbitration provision states:

> **(a) Arbitration or Small Claims Court.** Our goal is to resolve **Disputes** fairly and quickly. However, if we cannot resolve a Dispute with you, then, except as described elsewhere in **Section 15**, each of us waives the right to sue in court and instead agrees to submit the **Dispute** to the American Arbitration Association for resolution under its Commercial Arbitration Rules or, by separate mutual agreement, to another

---

[1] The Court is not making any findings of fact but rather summarizing the relevant allegations of the Complaint (Docket No. 1) and Charter's motion to compel arbitration (Docket No. 5) for purposes of evaluating Charter's motion.

[2] In Charter's motion, it asserts Ewing's original contract was with Time Warner Cable ("TWC"). Charter acquired TWC in May 2016 and operated under the brand name "Spectrum." (Mot. at 2.) Ewing did not dispute these assertions in his opposition to Charter's motion.

arbitration institution.  As an alternative, you may bring your
claim in your local "small claims" court, if its rules permit it.

3  (Mot. at 4; Docket No. 5-2, Def.'s Ex. B at p. 9[3]) (emphasis in original.)  A "**Dispute**" is

4  defined as "any dispute, claim, or controversy between you and **TWC** regarding any

5  aspect of your relationship with us or any conduct or failure to act on our part[.]"  (Def.'s

6  Ex. B at 15) (emphasis in original.)  Ewing "concedes to the existence of the arbitration

7  agreement at issue," but claims he "opted out" of the agreement in 2014 "pursuant to the

8  specific terms of the agreement."  (Docket No. 8, Opp'n at 2.)

9                                    **DISCUSSION**

10  **I.     Motion to Compel Arbitration**

11        Section 2 of the Federal Arbitration Act ("FAA") states that:

12            A written provision in any . . . contract evidencing a transaction
             involving commerce to settle by arbitration a controversy
13            thereafter arising out of such contract or transaction . . . shall be
             valid, irrevocable, and enforceable, save upon such grounds as
14            exist at law or in equity for the revocation of any contract.
15

16  9 U.S.C. § 2.  Section 2 demonstrates "'a national policy favoring arbitration' of claims

17  that parties contract to settle in that manner." *Preston v. Ferrer*, 552 U.S. 346, 352–53

18  (2008) (citing *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984)).  Section 4 of the FAA

19  provides that "a party aggrieved by the alleged failure, neglect, or refusal of another to

20  arbitrate under a written agreement for arbitration may petition any United States district

21  court . . . for an order directing that . . . arbitration proceed in the manner provided for in

22  such agreement." 9 U.S.C. § 4.  Federal policy favors arbitration, *Moses H. Cone Mem'l*

23  *Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  The FAA "establishes that, as a

24  matter of federal law, any doubts concerning the scope of arbitrable issues should be

25

26  _____

27  [3] All page number references to the parties' moving papers in this Order refer to the page
28  numbers generated by the CM/ECF system.

resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* at 24-25.

Notwithstanding the above, "question[s] of arbitrability," including "certain gateway matters," are "presumptively for courts to decide," *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564 n.2 (2013); *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016) ("[T]here is a presumption that courts will decide which issues are arbitrable; the federal policy in favor of arbitration does not extend to deciding questions of arbitrability."). The role of the district court is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

In addition, under Section 3 of the FAA, where an issue involved in a suit or proceeding is referable to arbitration under an agreement in writing, the district court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." 9 U.S.C. § 3. The language is mandatory, and district courts are required to order arbitration on issues covered by the arbitration agreement. *Kilgore v. KeyBank, N.A.*, 718 F.3d 1052, 1058 (9th Cir. 2013) (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).

Charter asserts Ewing's claims must be heard by an arbitrator, pursuant to the arbitration clause in the Subscriber Agreement. Remarkably, although Ewing specifically alleges otherwise in his Complaint (Compl. ¶ 37), his opposition does not contradict Charter's contentions that he is a subscriber and thereby subject to the Subscriber Agreement. Thus, by his own assertion that he opted out of "the arbitration agreement at issue" (Opp'n at 2), he implicitly admits to Charter's contentions regarding his subscriber

///

///

4

1  status and coverage under the Subscriber Agreement. Thus, the only issue before the

2  Court is whether Ewing effectively opted out of the arbitration clause.[4]

3      The first page of the Subscriber Agreement contains a statement surrounded by a

4  border and written in capitalized font advising the reader of the following:

5  THIS **AGREEMENT** CONTAINS A BINDING
   "ARBITRATION CLAUSE," WHICH SAYS THAT YOU
6  AND **TWC** AGREE TO RESOLVE CERTAIN DISPUTES
   THROUGH ARBITRATION, AND ALSO CONTAINS A
7  LIMITATION ON YOUR RIGHT TO BRING CLAIMS
   AGAINST TWC MORE THAN ONE YEAR AFTER THE
8  RELEVANT EVENTS OCCURRED. YOU HAVE THE
   RIGHT TO OPT OUT OF THESE PROTIONS OF THE
9  **AGREEMENT**. SEE SECTIONS 14, 15, and 16.

10

11

12  (Def.'s Ex. B at p. 2) (emphasis in original). Section 14 of the Subscriber Agreement

13  advises the reader of a one-year limitation of liability, unless he or she opts out of this

14  provision "within 30 days of the date that you first became subject to this provision (i.e.,

15  the date you first became subject to our **Customer Agreements** by signing a work order

16  or using our Services[.]" (*Id.* at p. 9)

17      In a similar fashion, Section 15 of the Subscriber Agreement contains information

18  about the arbitration clause. Relevant here, the provision advises the reader that, in the

19  event of a dispute with TWC (now Charter), the subscriber "waives the right to sue in

20  court and instead agrees to submit the dispute to [arbitration]" unless he or she opts out of

21  this provision "within 30 days of the date that you first became subject to this provision

22  (i.e., the date you first became subject to our **Customer Agreements** by signing a work

23  order or using our Services[.]" (*Id.* at p. 9-10) (emphasis in original.) Both Section 14

24  and Section 15 refer to Section 16 as to the process of opting out of these provisions.

25

26  ───────────────

27  [4] The Court concludes Ewing also concedes that his claims would be covered by the
28  scope of the arbitration clause if he has not opted out of the arbitration agreement.

1    Section 16 of the Subscriber Agreement advises the reader that "[t]o opt out of the

2 time limitation on claims that is set forth in Section 14, above, or the arbitration

3 provisions in Section 15, above, you must" either submit a written opt out request to

4 "Time Warner Cable, 60 Columbus Circle, Rm 16-329, New York NY 10023, Attn:

5 Senior Director, Compliance and Legal Affairs," or complete the opt out request online.

6 (Def.'s Ex. B at p. 10.)  Thus, in order to opt out of the Subscriber Agreement's

7 arbitration clause, a subscriber had to send a letter or complete an online opt out request

8 within 30 days of becoming subject to the agreement.

9    With its motion, Charter provided the declaration of one of its paralegals, who

10 reviewed Ewing's account history which demonstrated Ewing "subscribed to TWC's

11 residential high speed data and voice services commencing on September 17, 2014,

12 provided both telephone numbers he alleges TWC called, and currently subscribes to

13 Spectrum's cable services." (Docket No. 5-2, Declaration of Christine Flores ("Flores

14 Decl.") ¶ 4.)  Ms. Flores also attached a summary of Ewing's account, which also

15 indicates a service start date of September 17, 2014.  (Docket No. 5-3.)

16    In his opposition, Ewing does not object to or otherwise dispute Ms. Flores's

17 declaration or the attached evidence of his account history.  His sole argument is that he

18 "followed the opt out instructions outlined in Defendant's arbitration agreement."

19 (Opp'n at 3.)  He argues he "is no longer bound by the agreement" because he "followed

20 Defendant's explicit 'opt out' instructions to opt out of Defendant's agreement – in its

21 entirety[.]" (Id.)  Ewing provided his own declaration, which states he "sent a letter to

22 Time Warner Cable electing to opt out of the arbitration agreement and opting out of the

23 one year limitation to bring claims" on October 20, 2014, and attached a "true and correct

24 copy of the letter" to his declaration.  (Docket No. 8-2, Declaration of Anton Ewing

25 ("Ewing Decl.") ¶ 4.)  Ewing's letter, dated October 20, 2014, indicates it was correctly

26 addressed to the address listed in Section 16 of the Subscriber Agreement, and states

27 Ewing's intent to opt out of the provisions.  (Docket No. 8-2 at p. 2.)

28

In response, Charter disputes the existence of the letter and asserts it never received an opt out letter. (Docket No. 9, Reply at 1.) It further argues that, even assuming the letter was sent on October 20, 2014, it was untimely. The Court agrees. According to the "explicit" opt out provisions, Ewing was required to provide notice of his intent to opt out of the arbitration clause within 30 days of becoming subject to the agreement, i.e. the date he "first became subject to" the Subscriber Agreement by "by signing a work order or *using our Services*." (Def.'s Ex. B at p. 9) (emphasis added). Ewing did not dispute Charter's evidence that his services commenced on September 17, 2014. Therefore, Ewing's notice was due on October 17, 2014. As a result, Ewing's October 20, 2014 letter was untimely.

Thus, it appears to the Court that the Subscriber Agreement contains an arbitration clause that is "valid, irrevocable, and enforceable," 9 U.S.C. § 2, and the Court is required to refer Ewing's claims to arbitration. 9 U.S.C. §§ 3-4. Accordingly, Charter's motion to compel arbitration is **GRANTED**.

II.     Motion for Stay Pending Arbitration

Charter requests the Court stay this case pending the outcome of arbitration. Under Section 3 of the FAA, a federal court is required to stay the trial of an action "on application of one of the parties to stay the trial of the action until such arbitration has been had in accordance with the terms of this agreement." 9 U.S.C. § 3. Accordingly, Charter's motion for stay is **GRANTED** pending the outcome of the arbitration.

III.    Monetary Sanctions

Charter requests monetary sanctions against Ewing pursuant to Civil Local Rule 83.1. Rule 83.1 provides:

> Failure of counsel or of any party to comply with these rules, with the Federal Rules of Civil or Criminal Procedure, or with any order of the court may be grounds for imposition by the court of any and all sanctions authorized by statute or rule or within the inherent power of the court, including, without limitation, dismissal of any actions, entry of default, finding of

7

1  contempt, imposition of monetary sanctions or attorneys' fees
2  and costs, and other lesser sanctions.

3  Civ LR 83.1.a. The Court finds monetary sanctions are not warranted at this time.

4  Charter's request for monetary sanctions against Ewing is therefore **DENIED without**

5  **prejudice**.

6  **CONCLUSION**

7  For all of the reasons stated above, Defendant Charter's motion to compel

8  arbitration and stay action is **GRANTED,** and its request for monetary sanctions is

9  **DENIED without prejudice.**

10  **IT IS SO ORDERED.**

11

12  Dated: December ___, 2017

13  HON. ROGER T. BENITEZ
   United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28